Filed 10/28/25  P. v. Avila CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C101129 |
| Plaintiff and Respondent, | (Super. Ct. No. 62-151717) |
| v. | |
| ISABEL AVILA, | |
| Defendant and Appellant. | |

A jury found defendant Isabel Avila guilty of attempted premeditated murder, corporal injury to a cohabitant, and assault with a deadly weapon.  The trial court sentenced defendant to an aggregate term of seven years to life plus eight years in prison.  This court affirmed defendant's convictions on appeal but remanded the case for resentencing.  At resentencing, the trial court reimposed the previous sentence.

1

On appeal defendant claims the trial court abused its discretion by resentencing her under Penal Code[1] sections 1170 and 1385. She contends the trial court did not properly weigh the mitigating circumstances and that the low term was the presumptive term. Defendant also claims the trial judge should be disqualified upon remand. Finding no abuse of discretion, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

We quote the facts from our prior unpublished opinion conditionally upholding defendant's convictions: "Defendant . . . stabbed her live-in boyfriend [M.[2]] as he lay sleeping. She then turned the knife on her boyfriend's twin brother [P]." (*People v. Avila* (June 25, 2020, C087087) [nonpub. opn.] (*Avila I*).) The evidence adduced at trial showed that defendant lived with M. and P., and on the day of the attack, M. had told P. that he was going to end the relationship with defendant. Defendant and M. then argued. Defendant told M. to " 'find another girlfriend,' " and M. told defendant to " 'consider looking for another place to live.' " (*Ibid.*) Immediately prior to the attack, defendant "exchanged a series of text messages with her ex-husband and daughter." (*Ibid.*) "First, she texted to her ex-husband, E., stating: 'The legal war ha[s] begun.' When asked to explain, she elaborated: 'Between both dickheads, one dickhead told me to get the fuck out.' Next, she texted her daughter, stating: 'One dickhead, [M.], told me to get the fuck out.' Then, she sent another message to E., stating: 'I told them fuck off.' " (*Ibid.*)

"A short time later, M. was awakened by a 'thump.' He opened his eyes and saw defendant on top of him, making a stabbing motion with her arm. She was saying, 'You're not getting me out of here easy' or 'I'm not leaving out of here easy.' M. realized he was bleeding. He managed to get out of bed and make his way to the kitchen.

---

[1] Undesignated statutory references are to the Penal Code.

[2] To protect their privacy, we refer to the victims by their initials. (Cal. Rules of Court, rule 8.90(b)(4), (10).)

[¶] P., still in his room, heard a high-pitched sound, followed by the sound of M. calling his name. P. emerged from his room in time to see M. staggering towards the kitchen island and bleeding profusely. M. told P., 'She killed me. I'm dead.' M. then collapsed onto the floor and lost consciousness. [¶] P. knelt on the floor, trying to render aid to his wounded brother. He heard defendant saying, ' "You can't get rid of me. You can't kick me out. I have rights." ' He turned and saw defendant advancing towards him with a large kitchen knife clenched in her upraised right fist. P. grabbed the knife from defendant and ran next door to summon help." (*Avila I*, *supra*, C087087.)

The jury found defendant guilty of attempted premeditated murder, corporal injury to a cohabitant, and assault with a deadly weapon. On the attempted murder and corporal injury to a cohabitant counts, the jury found defendant personally inflicted great bodily injury under circumstances involving domestic violence and personally used a deadly or dangerous weapon. The trial court sentenced defendant to seven years to life plus a determinate term of eight years, consisting of seven years to life for attempted murder, three years for assault with a deadly weapon, four years for the great bodily injury enhancement, and one year for the deadly weapon enhancement. Pursuant to section 654, the court imposed and stayed sentence on the corporal injury to a cohabitant count and the associated enhancements.

Defendant appealed and this court conditionally reversed the judgment and remanded the case to the trial court with directions to hold a diversion eligibility hearing. (*Avila I*, *supra*, C087087.) On remand, the trial court denied diversion, finding defendant ineligible. (*People v. Avila* (Feb. 27, 2023, C093992) [nonpub. opn.] (*Avila II*).) In the subsequent appeal, another panel of this court affirmed the trial court's order but remanded the case for resentencing under section 1170, subdivision (b) and recently amended section 654. (*Avila II*, *supra*, C093992.)

On remand, the parties filed sentencing briefs and the probation department provided a supplemental probation memorandum. The probation report established

3

defendant had earned several certificates and college credits, received positive work feedback, and had no disciplinary issues while in prison. Defendant also submitted several laudatory letters, awards, and recognition from prison staff.

The trial court held a resentencing hearing. Defense counsel asked the trial court to strike all but one of the enhancements under section 1385 and to impose the lower term on the assault with a deadly weapon count. Defendant also asked the trial court to stay the attempted murder count under section 654 while imposing the corporal punishment to a cohabitant count. The trial court heard testimony from defendant's witness Dr. Sharon Howard. Dr. Howard testified that trauma, intimate partner violence, and mental illness were contributing factors to defendant's criminal conduct. The prosecution requested the trial court reimpose the same sentence.

On the question of striking the enhancements, the trial court explained its understanding of section 1385, subdivision (c)(2)(B), noting, "[T]he word 'shall' does not operate independently of the other provisions of section 1385," and "[n]othing in the statute prohibits the court from exercising discretion in choosing the enhancements to be dismissed." It followed, "With that in mind, the court has considered the language in [section] 1385 regarding dismissal of multiple enhancements and will exercise its discretion that is still afforded under . . . [s]ection 1385. The court has considered the interest of justice, pursuant to [section] 1385, and will exercise its discretion to deny any request to dismiss or strike enhancements." The trial court found, "[I]t would not serve the interest of justice to dismiss [the deadly weapon] enhancement and to thereby simply ignore one of the central underlying facts in this case, which is that a dangerous weapon, a kitchen knife, was used to stab victim (M.) multiple times, almost killing him, and inflicting the wounds the court's already discussed, as well as the effects of those injuries, which continue."

With respect to sentencing defendant to the middle term, the trial court explained, "[S]ection 1170[, subdivision ](b)(6), which is in play here, does not automatically

4

mandate a lower term.  Specifically, section 1170[, subdivision ](b)(6) provides . . . [']unless the court finds that the aggravating circumstances outweigh the mitigating circumstances, that such imposition of the lower term would be contrary to the interest of justice, the court shall order imposition of the lower term, if any of the following was a contributing factor in the commission of the offense.['] " It acknowledged defendant alleged, as contributing factors, she experienced psychological, physical, or childhood trauma, including but not limited to abuse, neglect, exploitation, or sexual violence; and/or prior to the instant offense, or at the time of the commission of the offense, defendant was a victim of intimate partner violence or human trafficking.

The trial court found psychological trauma was not a contributing factor to the commission of defendant's offenses under the circumstances of this case.  In stating the basis for its finding, the trial court stated, "Those circumstances include that . . . defendant was of the belief that she was being forced out of the residence, and that . . . boiled over to her attack on (M.) and then assaulting (P.) with the deadly weapon.  The text messages within the minutes leading up to the incident reflect her actual mental state at that time.  [¶]  In those messages . . . she explained to her ex-husband that the legal war has begun, and then elaborated that the legal war was between, quote, both dickheads, referring to both (M.) and (P.).  [¶]  Even Dr. Howard concedes that there are instances where crimes can be committed without having a relationship to claimed psychological, physical, or childhood trauma, or to whether or not the defendant was a victim of intimate partner violence or human trafficking.  [¶]  Much of the dispute here that led to the incident was based on [defendant's] belief that she was being forced out of the house, and she also had a false belief that she had some ownership interest in the house, which gave her superior rights, in terms of being able to stay in the house."

The trial court alternatively reasoned, "[A]ssuming that the claimed psychological trauma can be deemed a contributing factor in the commission of the offense, the second question the court would have to answer is whether the aggravating factors outweigh the

5

mitigating factors such that the imposition of the low term of custody would not be in the interest of justice." In doing just that, the trial court stated it considered "the circumstances in aggravation or mitigation listed in the California Rules of Court, including [r]ules 4.421 and 4.423, including . . . other factors that reasonably relate to . . . defendant or the circumstances under which the crime [was] committed." The court also indicated the aggravating and mitigating circumstances it considered were in the probation report, specifically mentioning defendant used a deadly weapon, the victim was vulnerable, and there was a serious injury.

"In determining whether imposition of a low term of imprisonment [was] not in the interest of justice, the court . . . made an individualized consideration of the following factors: The constitutional rights of . . . defendant, the interest of society represented by the [prosecution], . . . defendant's background and prospects, including the presence or absence of a significant criminal record, and the nature and circumstances of the crime, and . . . defendant's level of involvement, including the factors in mitigation or aggravation." In mitigation the trial court considered "all of the material [defendant] submitted, including all the letters on how she's doing and how she's progressed since she's been incarcerated."

The trial court further found the other alleged contributing factor (defendant being a victim of intimate partner violence) was not a contributing factor to the commission of the assault with a deadly weapon count, and even if it was, the aggravating circumstances outweighed the mitigating circumstances. Specifically, the trial court referenced witness testimony from trial related to defendant being a victim of intimate partner violence, a report from a defense expert, and that the jury was instructed on and rejected the claim by finding intimate partner violence was not a contributing factor. As such, the trial court found it was not in the interests of justice to impose the lower term on the assault with a deadly weapon charge.

The trial court reimposed the previous sentence, including the middle term on the assault with a deadly weapon count.

Defendant appeals.

DISCUSSION

Defendant claims the trial court abused its discretion under section 1385, subdivision (c), arguing the trial court did not find dismissing one of the two enhancements would endanger public safety, did not expressly state the requirement in section 1385, subdivision (c)(2) that the trial court give "great weight" in favor of dismissal to the mitigating circumstances, and improperly relied on the underlying facts as grounds to decline dismissing the enhancement. Defendant also claims the trial court abused its discretion by imposing the middle term on the assault count. We disagree.

We review a trial court's sentencing decisions for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847; see *People v. Carmony* (2004) 33 Cal.4th 367, 374 ["a court's failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard"].) Defendant bears the burden of clearly showing that the trial court's decision was irrational or arbitrary. (*Carmony*, at pp. 376-377.) In the absence of evidence in the record to the contrary, we presume the trial court was aware of, and followed, the law. (*People v. Thomas* (2011) 52 Cal.4th 336, 361.) "The court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

I

*Section 1385*

Under section 1385, subdivision (c), the trial court was not required to find that dismissal of the enhancement endangered public safety. (*People v. Walker* (2024) 16 Cal.5th 1024, 1036.) Rather, it retained discretion to determine whether countervailing factors—other than public safety—" 'nonetheless neutralize even the

7

*great weight* of the mitigating circumstance[s], such that dismissal of the enhancement is not in furtherance of justice.' " (*Ibid.*, italics added, quoting *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1098.)

Here, the record supports the conclusion the trial court understood its discretion. As an initial point, we presume the trial court afforded *great weight* to the mitigating circumstances as required (*People v. Thomas*, *supra*, 52 Cal.4th at p. 361; *People v. Myers*, *supra*, 69 Cal.App.4th at p. 310), but declined to dismiss the enhancement because countervailing factors neutralized the great weight of the mitigating circumstances such that dismissal was not in the interests of justice (see *People v. Walker*, *supra*, 16 Cal.5th at p. 1036, citing *People v. Ortiz*, *supra*, 87 Cal.App.5th at p. 1098). Moreover, the trial court's statement on the record demonstrates it considered the parties' briefing and arguments, the probation report, the underlying circumstances of the enhancements, the aggravating and mitigating circumstances, and defendant's background and criminal history. Under the totality of circumstances, the trial court found the aggravating circumstances outweighed the mitigating circumstances. Defendant has not established error or an abuse of discretion.

II

*Section 1170, Subdivision (b)(6)*

Defendant further claims the trial court fundamentally misapprehended its sentencing discretion and arbitrarily found the aggravating circumstances outweighed the mitigating circumstances in deciding to impose the middle term sentence. We conclude the trial court did not abuse its discretion.

Section 1170 contains a presumption in favor of the lower term if certain mitigating circumstances were a contributing factor in the commission of an offense. (§ 1170, subd. (b)(6).) Here, two mitigating circumstances under section 1170, subdivision (b)(6) exist—the person has experienced childhood trauma (§ 1170, subd. (b)(6)(A)) and intimate partner violence (§ 1170, subd. (b)(6)(C)). If a presumptive

8

lower term factor contributed to an offense, the trial court may impose the middle term only if it finds that the aggravating circumstances in California Rules of Court, rule 4.421 outweigh the mitigating circumstances[3] such that imposition of the lower term would be contrary to the interests of justice.  (§ 1170, subd. (b)(6).)

Applying this standard, we conclude the trial court did not abuse its discretion in imposing the middle term.  The trial court explained the operation of section 1170, indicating it understood its discretion.  In its ruling the trial court made two separate findings, that defendant's past trauma and intimate partner violence did not contribute to the underlying crime and that even if they did, the trial court found the aggravating circumstances outweighed the mitigating circumstances.

The trial court reviewed a report and heard testimony from Dr. Howard, defendant's expert, who detailed defendant's medical and mental health history. Although Dr. Howard's opinion was that defendant's trauma and prior victimization substantially contributed to her behavior at the time of the offenses, the trial court rejected it by drawing reasonable inferences from the record contrary to Dr. Howard's opinion.  The trial court found that contemporaneous text messages from defendant to her family related to "her belief that she was being forced out of the house, and [her] false belief that she had some ownership interest in the house."  The trial court also directly addressed this point with Dr. Howard, who agreed that a person can experience trauma in their lifetime and "later commit a criminal offense that is not a result of that trauma," and

---

[3]     Here, three mitigating circumstances under the California Rules of Court were before the trial court.  (See Cal. Rules of Court, rules 4.423(b)(1) ["The defendant has no prior record, or has an insignificant record of criminal conduct, considering the recency and frequency of prior crimes"], 4.423(b)(3) & (4) [circumstances in mitigation include when a defendant experienced childhood trauma that "was a factor in the commission of the crime," or "[t]he commission of the current offense is connected to the defendant's prior victimization or childhood trauma"], 4.423(b)(5) ["The defendant is or was a victim of intimate partner violence . . . and it was a factor in the commission of the offense"].)

9

conceded that she could not pinpoint a specific point in time where defendant's trauma may have been "playing out." (See *People v. Carmony*, *supra*, 33 Cal.4th at p. 377 [concluding an appellate court will not reverse a trial court's decision merely because reasonable people might disagree].)

The trial court's alternative finding—even if defendant had met her burden to show her past trauma and intimate partner violence contributed to her crimes, other aggravating circumstances outweighed the mitigating circumstances—was not arbitrary. Defendant contends the trial court did not attribute enough weight to her rehabilitation efforts. The court's lengthy and detailed sentencing decision shows the trial court considered and "paid careful attention to all of the information submitted on behalf of . . . defendant regarding her performance and conduct since she has been incarcerated." In imposing the middle term, the trial court did not improperly weigh the evidence of aggravating circumstances such as the victim being particularly vulnerable, the crime involving great violence and great bodily harm, and defendant arming herself with a knife. (See *People v. Scott* (1994) 9 Cal.4th 331, 355 ["The reviewing court cannot . . . reweigh valid factors bearing on the decision below].) We conclude the trial court did not abuse its discretion.

Because we conclude the trial court did not abuse its sentencing discretion and will not remand the case, we need not address defendant's claim the trial judge should be disqualified.

## DISPOSITION

The judgment is affirmed.

           /s/_____
           ROBIE, Acting P. J.

We concur:

/s/_____
DUARTE, J.

/s/_____
RENNER, J.